**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 16, 2015**

# In the Court of Appeals of Georgia

A15A1000. BROWN et al. v. HOWARD et al.

BRANCH, Judge.

Courtney Howard sued various medical providers, alleging that they committed negligence during the delivery of Howard's daughter Sahara, thereby causing a severe brain injury to the child. During the litigation, the medical providers sought discovery of Howard's own medical records, which led to a dispute about whether and to what extent certain of the requested documents were protected from discovery by a privilege. The medical providers appeal the trial court's ruling that most of the subject documents are privileged; they further contend the trial court erred by failing to require a privilege log that specified the matters that were privileged and the applicable privilege. For the reasons that follow, we reverse and remand with direction.

This Court reviews a trial court's decision as to discovery matters, including the application of a privilege, for an abuse of discretion. *Etowah Environmental Group v. Walsh*, 333 Ga. App. 464, 475 (3) (774 SE2d 220) (2015) (attorney-client privilege); *Wiles v. Wiles*, 264 Ga. 594, 598 (2) (448 SE2d 681) (1994) (psychiatrist-patient privilege). Further, we also may review the documents at issue to determine whether the trial court correctly applied the privilege. See, e.g., *Plunkett v. Ginsburg*, 217 Ga. App. 20, 21 (456 SE2d 595) (1995); *Annandale at Suwanee v. Weatherly*, 194 Ga. App. 803, 804 (392 SE2d 27) (1990).

In her suit, Howard alleged that she became pregnant in late 2010 and that her pregnancy proceeded normally for 27 weeks. At that point, due to certain symptoms, Howard presented to Wellstar Cobb Hospital, but the fetus was found to be doing well and Howard was discharged home early in the morning of May 31, 2011. On June 3, Howard returned to Wellstar when her "membranes spontaneously ruptured," but tests at the hospital did not confirm the rupture and Howard was discharged at 1:40 a.m. on June 4. On June 7 at 7:40 p.m., Howard returned a third time, this time with lower abdominal pain. Tests taken as early as 1:20 a.m. and again at 3:30 a.m. on June 8 indicated a need for an immediate delivery of the child, but the child was not delivered until approximately 6:00 a.m. Howard alleges that the medical providers

were negligent in providing care thereby causing the child to sustain a severe brain injury.

During discovery, the medical providers asked Howard to produce all of her medical records from age 10 to the present, and requested that she identify all treatment she had received from psychologists, psychiatrists, clinics, and all other medical providers. In response, Howard objected on the ground that the request was overly broad and unduly burdensome but not on the ground of privilege.[1] Howard was then deposed, during which she revealed that she smoked as many as four joints of marijuana a day prior to learning that she was pregnant and that she was further exposed to other people smoking marijuana during the remainder of her pregnancy; she also admitted resuming smoking marijuana after she delivered the child. She denied using any other drugs. Howard also admitted that she had previously received mental health and substance abuse treatment at Cobb Recovery Center ("CRC") and that she had taken "drug classes" there as a condition of probation arising out of a

---

[1] On appeal, the medical providers do not argue that the trial court erred by concluding that Howard had not waived the applicable privilege. See generally *Kennestone Hosp. v. Hopson*, 273 Ga. 145, 149 (538 SE2d 742) (2000) ("[A] party's silence and failure to act in response to a request for privileged matter from a nonparty health care provider or facility under OCGA § 9-11-34 (c) (2) does not waive the party's privilege by implication.").

3

charge of simple battery that was later dropped. Medical documents produced from other sources showed that Howard tested positive for marijuana on one or more occasions during her pregnancy.

As a result, the medical providers requested that Howard provide a HIPAA[2]-compliant authorization that would allow CRC to produce Howard's CRC records. Howard apparently refused, and the medical providers moved to compel production of the CRC records. Howard responded and objected on the ground that the documents were not relevant because they pertained only to treatment Howard received several years before and several years after her pregnancy. She also objected on the ground that the documents were protected by the mental health privilege. The trial court conducted a hearing on the motion, following which the court directed Howard to produce to the court all CRC records for an in camera review, to produce to the court a privilege log meeting the parameters of Federal Rule of Civil Procedure

---

[2] The Heath Insurance Portability and Accountability Act of 1996. 42 U. S. C. § 1320d et seq.

4

26 (b) (5) (A),[3] and to produce to the medical providers any non-privileged documents. Howard produced to the court all CRC documents with an index, but there is no indication that Howard produced a privilege log that complied with FRCP 26. Howard also produced to the medical providers the CRC billing records. The court subsequently issued an order in which it stated that it had reviewed the documents to determine

> (1) whether the records are privileged (2) whether there are any non-privileged records in the submission, (3) whether there has been a waiver of the privilege with regard to any privileged information, and (4) whether to require the disclosure of any records which are not privileged or as to which any privilege has been waived.

The trial court then concluded that, with the exception of the billing records already produced by Howard, the CRC records "are privileged and [ ] the privilege has not

---

[3] FRCP 26 (b) (5) (A) provides,

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

been waived."[4] The court did not address Howard's failure to produce a privilege log. This Court granted the medical providers' request for interlocutory review of the trial court's decision with regard to the documents the trial court deemed to be privileged.

1. The medical providers contend the trial court erred by concluding that all of the CRC records other than the billing records were privileged. The providers contend they are entitled to those portions of the documents that show (a) dates, times, and individual providers of services rendered to Howard by CRC; (b) any educational services provided by CRC to Howard, including substance abuse classes and job training; (c) Howard's communications made to or recorded by non-licensed personnel or personnel not listed in OCGA § 24-5-501 (a); and (d) court-mandated or probation-related evaluations and drug tests of Howard conducted by CRC.

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" OCGA § 9-11-26 (b) (1). Georgia law provides several privileges related to mental health, which, collectively, are referred to as the "mental health privilege." *State v. Herendeen*, 279

---

[4] The court also stated that it would maintain the privileged CRC documents under seal, and the documents were delivered under seal to this Court.

6

Ga. 323, 325 (613 SE2d 647) (2005). The components of the mental health privilege

include

> (5) Communications between psychiatrist and patient;
>
> (6) Communications between licensed psychologist and patient as provided in Code Section 43-39-16;
>
> (7) Communications between a licensed clinical social worker, clinical nurse specialist in psychiatric/mental health, licensed marriage and family therapist, or licensed professional counselor and patient; [and]
>
> (8) Communications between or among any psychiatrist, psychologist, licensed clinical social worker, clinical nurse specialist in psychiatric/mental health, licensed marriage and family therapist, and licensed professional counselor who are rendering psychotherapy or have rendered psychotherapy to a patient, regarding that patient's communications which are otherwise privileged by paragraph (5), (6), or (7) of this subsection[.]

OCGA § 24-5-501 (a). See also OCGA § 43-39-16 ("The confidential relations and communications between a licensed psychologist and client are placed upon the same basis as those provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed."). Thus, "[a]ny information . . . which had its origins in communications from the patients to the [mental] health providers is privileged." *Herendeen*, 279 Ga. at 327 (citations omitted).

7

The mental health privilege "remains inviolate even though the patient's care and treatment or the nature or extent of the patient's injuries are put in issue in a civil proceeding." *Cooksey v. Landry*, 295 Ga. 430, 432-433 (2) (761 SE2d 61) (2014) (citations omitted). And "[t]he psychiatrist-patient privilege is not diminished by the fact that the patient sought or contemplated treatment jointly with other persons, or primarily for the benefit of another person who is in treatment by the same psychiatrist." *Mrozinski v. Pogue*, 205 Ga. App. 731, 733 (1) (423 SE2d 405) (1992) (addressing family therapy); *Sims v. State*, 251 Ga. 877, 880 (5) (311 SE2d 161) (1984) (statements made by husband during joint psychiatric counseling with wife were privileged); compare *Karpowicz v. Hyles*, 247 Ga. App. 292, 294 (1) (543 SE2d 51) (2000) (mother's statement to licensed clinical psychologist who treated her daughter that she was afraid that her daughter was unable to distinguish fact from reality was not privileged because only daughter, not mother, sought mental health treatment). Also, drug and alcohol treatment records are protected by federal law under certain circumstances. See *Sletto v. Hosp. Auth.*, 239 Ga. App. 203, 208 (521 SE2d 199) (1999), Eldridge, J., concurring specially.

But all psychiatric records "are not absolutely privileged." *Plunkett*, 217 Ga. App. at 21. And nonprivileged portions of such records are subject to discovery.

8

*Aetna Cas. & Sur. Co. v. Ridgeview Institute*, 194 Ga. App. 805 (392 SE2d 286) (1990). For example, "[t]he privilege does not extend . . . to any communications made [by the patient] to nurses or attendants, unless [the nurses or attendants] were acting as agents of the attending psychiatrist[.]" *Plunkett*, 217 Ga. App. at 21 (citation omitted). Similarly, "[t]o the extent that the records in question disclose information or communications made between [a mental health professional] and persons other than [another mental health professional or his or her] agent and such communications are relevant to [the] defense, they would be discoverable under Georgia law." *Aetna Cas. & Sur. Co.*, 194 Ga. App. at 806 (1) (citation omitted). And where "no mental health treatment is given or contemplated" — for instance, when a court appoints a mental health provider to evaluate a person's mental state as opposed to providing treatment — the mental health privilege is inapplicable. *Herendeen*, 279 Ga. at 326. Compare *In re I. M. G.*, 276 Ga. App. 598, 603 (1) (624 SE2d 236) (2005) (even if a patient received treatment involuntarily, the fact that she received psychotherapist-patient *treatment* meant the mental health privilege applies). Also, drug tests required by an employer are not protected. *Foster v. Swinney*, 263 Ga. App. 510, 512 (a) (588 SE2d 307) (2003). Finally, "the fact of employment of or treatment by a mental health provider and the dates thereof do not fall within the

mental health privilege and may be disclosed." *Herendeen*, 279 Ga. at 327 (citations omitted); *Kennestone Hosp.*, 273 Ga. at 148; *Mincey v. Ga. Dept. of Community Affairs*, 308 Ga. App. 740, 746 (1) (708 SE2d 644) (2011).

Our review of the records at issue shows, among other things, dates of service; the names of several persons whose professional status is unknown; numerous documents where, without additional information about the content of the document, we are unable to tell whether it had its origin in a communication between Howard and a mental health provider; documents that include undefined acronyms making the nature of the services rendered indecipherable; reports of a medical doctor concerning a medical diagnosis; various notices of the privacy practices of the Cobb/Douglas County Community Services Boards and consent agreements signed by Howard regarding her right to confidentiality and any exceptions thereto; statements of payment for services; indications that Howard has participated in group counseling sessions but without specifics regarding the group nature of the sessions; medical risk assessment documents; communications from Howard's mother to CRC personnel; a letter "To Whom It May Concern" regarding the program and treatment Howard was receiving; documents reporting conversations with other non-professionals present; and indications of the results of random drug screenings.

Many of these documents, however, are obviously not relevant to the present proceedings. Nevertheless, because some of the documents may be both relevant and non-privileged, the trial court erred by concluding that all of the documents other than the produced billing documents are privileged. *Plunkett*, 217 Ga. App. at 22. Any relevant and non-privileged documents should be produced even if redactions are necessary. This Court is unable to complete the review of the documents without additional information not available to this Court, such as, among other things, the professional status of certain individuals, whether the information in some of the documents had its origin in a communication between Howard and a mental health provider, and whether certain documents reflect treatment other than mental health treatment. Accordingly, this case is remanded to the trial court for an in camera review in conformance with this opinion, "i.e., to separate privileged versus non-privileged information and provide a redacted copy." Id. (reversing trial court's order determining that entire psychiatrist's file was privileged and remanding for additional in camera review); see also *Herendeen*, 279 Ga. at 328 (remanding case for in camera review to determine what documents were privileged).

2. The medical providers contend the trial court also erred by barring any discovery of the CRC records without requiring Howard to produce a privilege log

in compliance with Rule 26 (b) (5) (A) of the Federal Rules of Civil procedure as it had previously ordered. The trial court had ordered Howard to prepare such a log in response to the medical providers' motion to compel production of the CRC records, but it did not specify a penalty for noncompliance. In its order following the in camera review of the CRC documents, the trial court did not address Howard's failure to produce a privilege log. Because the trial court has not addressed Howard's failure to produce a privilege log, there is nothing for this Court to review; we are not able to assess whether the trial court breached its discretion. Upon remand, the trial court should address Howard's failure to comply with the court's own ruling to prepare such a log.

*Judgment reversed and case remanded with direction.* Andrews, P. J., and Miller, J., concur.